IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BENNY J. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO 05-0036-KD-M |
| | ) | |
| FRANCES J. HARVEY, Secretary, | ) | |
| United States Department of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case wherein plaintiff Benny J. Smith brings an action against his employer, defendant United States Department of the Army, Army Corps of Engineers in Mobile, Alabama for race and sex discrimination and retaliation. Plaintiff's action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. §1981, et seq. Plaintiff alleges that he was not selected for the position of Program Analyst, GS-343-11, on the basis of his race (Black) and sex (male) and in retaliation for having engaged in protected Equal Employment Opportunities (EEO) activities. Plaintiff claims that the Corps discriminated against him when it hired a white female instead of plaintiff. (Doc. 1).

This matter is before the court on defendant's motion for summary judgment and supporting memorandum (Doc. 13, 14), plaintiff's response (Doc. 22), and defendant's reply (Doc. 29). As set forth in detail below, upon consideration of all matters presented and after consideration of the evidence in a light most favorable to plaintiff, the court determines that defendant's motion for summary judgment (Doc. 13) is due to be **GRANTED.**

I.    **Factual Background**

1.  Plaintiff attained the level of GS-11 as an Operating Accountant at the Office of Fiscal Services in Washington D.C. (Doc. 14, Exhibit 12). Plaintiff resigned in 1978 and relocated to Mobile, Alabama (Doc. 14, Exhibit 12).  In 1982, he accepted a job with the Mobile District, U.S. Army Corps of Engineers, as a Budget Assistant at the GS-06 level. (Doc. 14, Exhibit 13). When plaintiff was denied the position of program Analyst GS-343-11, plaintiff was employed as a GS-09 Budget Analyst in the Civil Works Branch of the Programs and Project Management Division. (Doc. 1; Doc. 6).  He retired from the Corps effective January 3, 2004. (Docs. 14, 22).

2.  On May 17, 2001, plaintiff filed an EEO complaint based on race alleging that a GS-12 analyst position had been filled noncompetitively, which discriminated against him because the job should have been open for competition and he should have been allowed to compete. (Docs. 1, 14, 22).  That EEO complaint resulted in a negotiated settlement agreement entered on October 4, 2001, wherein plaintiff was to receive priority consideration[1] for the next GS-11 Program Analyst position available in the Project Management Office, Civil Works Branch. (Doc. 14, Exhibit 14; Doc. 22).  This "next GS-11 position" is the basis for the present litigation. (Doc. 1).[2]  Plaintiff was not given "priority consideration", nor was he hired when he

---

[1] Priority consideration "is a term of art in the jargon of federal employment law.  It is settled law that, as a term of art, 'priority consideration' means that an employee will receive *bona fide* consideration by the selecting official before any other candidate is referred for consideration and that the employee will not be considered in competition with other candidates and will not be compared with them." Pope v. Federal Communications Commission, 311 F. 3d 1379, 1381-1382 (Fed. Cir. 2002) citing in part Perry v. Department of the Army, 992 F. 2d 1575, 1579 (Fed. Cir 1993).

[2]  On November 20, 2003, plaintiff filed an action in the United States District Court for the Southern District of Alabama alleging that defendant breached the terms of the October 4, 2001 negotiated settlement agreement.  His action was dismissed for failure to timely notify the

competed for the GS-11 position. (Docs. 14, 22).

    3.  The position was filled using a Corporate Selection Process. (Doc. 14, Exhibit 9, certified copy of the memo outlining the process).  The process requires a diverse panel composed of Corps employees to make the hiring decision, not only in terms of race and sex but also diversified by containing members from a range of different divisions. (Doc. 14, Exhibit 1, ¶ 4).  In the present case, the panel consisted of five members: a white male - Robert Bond, plaintiff's immediate supervisor, and four other Mobile District officials who were not employed in plaintiff's chain of command. (Doc. 14, Exhibits 1-5).  Bond chaired the panel and was responsible for developing the job criteria and interview questions, and developing the selection panel. (Doc. 14, Exhibit 1).  The other four panel members were a  female - Susan Ivester Rees, Coastal Environment Team Leader in the Planning Division (Doc. 14, Exhibit 2, ¶ 2); a black male - Kenneth Day, Park Manager, Natural Resources Management Section, Technical Support Branch, within the Operations Division (Doc. 14, Exhibit 3, ¶ 2); a white male - Roger A. Burke, Chief of Plan Formation Branch in the Planning and Environmental Division (Doc. 14, Exhibit 5, ¶ 2); and a white male - Henry Baugh, Lead Management Analyst in the Resource Management Division (Doc. 14, Exhibit 4, ¶ 2).

    4.  Additionally, the selection process was monitored by Donald D. Pettaway, an African American male, Chief of the EEO section who attended the panel deliberations. (Doc. 14, Exhibit 6; Exhibit 11, p. 35).  His function was to ensure compliance with the proper EEO

---

defendant of his complaint regarding the GS-11 job notice. The court held that "Plaintiff is estopped from alleging in an untimely manner that the Army failed to give Plaintiff priority consideration". (Doc. 19, Civil Action No. 03-0791-BH-M, April 27, 2004).  The case was settled on appeal. (Doc. 24).

guidelines and to ensure that only proper EEO considerations were used in the hiring. (Doc. 14, Exhibit 6). Also, the selection process was monitored by Julie Ann Robinson, a Personnel Specialist from the Personnel Office, who advised the panel on all personnel issues related to the hiring. (Doc. 14, Exhibit 7). Both Pettaway and Robinson were present during all of the Panel's deliberations. (Doc. 14, Exhibit 6, ¶ 4; Exhibit 7, ¶ 4).

     5. "The original referral list consisted of ten applicants with one withdrawing. All of the remaining applicants were from within the Department of the Army. The Selection Panel screened the applicants by independently evaluating them and then consolidating the names into a list of finalists for interview purposes. The Selection Panel decided to interview the top three candidates[:]" Plaintiff, Cheryl Weeks, and Joan Reading, all Army Corps of Engineers employees. (Doc. 14, Exhibit 1, ¶ 5).

     6. The interviews were held on November 14, 2002. (Doc. 14, Exhibit 1, ¶ 10). Afterward, the Selection Panel ranked the candidates on a ranking matrix. Weeks was ranked number one choice by four of the five panel members, Reading was ranked number one choice by one panel member, but plaintiff was not selected as the number one choice for any panel member. Four panel members ranked plaintiff as their last choice including Day, the black panel member. According to the matrix, the candidates received one point for ranking first choice, two points for ranking second choice, and three points for ranking third choice. Weeks received 6 points, Reading received 10, and plaintiff received 14. (Doc. 14, Exhibit 10, Tab H).

     7. During the finalists' interviews, the panel members rotated asking questions and the same interview questions were asked to each candidate. (Doc. 14, Exhibit 1, ¶ 6; Exhibit 2, ¶ 2; Exhibit 3, ¶ 3; Exhibit 4, ¶ 4; Exhibit 6, ¶ 4; Exhibit 7, ¶ 4). All panel members found plaintiff

did not give a good interview, did not show knowledge of the Program Management Program, and did not exhibit strong communication skills. (Id.)[3]

8. The four panel members who ranked Weeks as their first choice stated that she showed initiative, good communication skills, strong technical skills relative to the position, answered questions well, and had a good understanding of the Project Management process. (Doc, 14, Exhibit 1, ¶ 8, (Bond); Exhibit 2, ¶ 3 (Rees); Exhibit 4, ¶ 5 (Baugh); and Exhibit 5, ¶ 4 (Burke)[4].

---

[3] Specifically, panel member Day stated as follows:

> I ranked Plaintiff as my third choice because his experience as he articulated it was pre-implementation of the Corps of Engineers Financial Management System (CEFMNS) and dated. Plaintiff had not exhibited as much self development as the other two candidates and his interview itself was much weaker than Ms. Weeks and the other candidate's interview.

(Doc. 14, Exhibit 3, ¶ 5).  Also, Burke stated that the "terminology that [plaintiff] used in answering the questions was not quite on point" and that plaintiff "seemed to rely too much on his seniority in his current position to show that he was qualified." (Doc. 14, Exhibit 5, ¶ 4). Rees stated that plaintiff's "experience as he articulated it was pre-implementation of the Corps of Engineers Financial Management System (CEFMS) and dated", that plaintiff "had not exhibited as much self development as the other two candidates" and that "his interview was much weaker[.]' (Doc. 14, Exhibit 3).  EEO Observer Pettaway recalled that plaintiff did not give a good interview and "failed to provide much information in response to the questions asked of him by the panel" but "Weeks gave a very strong interview displaying her knowledge[.]" (Doc. 14, Exhibit 6, ¶ 4).

[4]  Panel member Burke stated as follows

> I ranked Cheryl Weeks as my number one choice to recommend for this Budget Analyst position as her responses were more directly on point to the answers that the panel members were expecting.  She used terminology and couched her responses in a way to relate to me that she had a good understanding of the job responsibilities.

(Doc. 14, Exhibit 5, ¶ 4).

9.  Plaintiff has a bachelor's degree and Weeks does not (Doc. 22).  However, a degree was not a requirement for the position. (Doc. 14, Exhibit 11 at 35).

10.  Of the panel members, only plaintiff's immediate supervisor Bond was aware that plaintiff previously filed an EEO complaint and lawsuit.  Bond stated that he "was aware that Plaintiff had previously filed an EEO complaint" but "this information was not shared with any other panel members nor was it a consideration into my personal candidate ranking decision." (Doc. 14, Exhibit 1, ¶ 9).  The declarations of the remaining four panel members and the two observers did not dispute his statement. (Doc. 14).  Specifically, Day stated that "[a]t no time during my meeting with the panel were there any discussions related to race or sex and no one mentioned, nor was I aware of, any of the candidates previously filing an EEO complaint action." (Doc. 14, Exhibit 3 at ¶ 5).  Burke stated that "[t]he panel did not engage in any discussion about race, sex or any other matters that did not pertain to the information that the applicants shared in their interview. Additionally, there was no discussion by the panel concerning whether any of the applicants had engaged in prior EEO activity and I was not aware whether they had or not when I ranked the candidates." (Doc. 14, Exhibit 5, ¶ 4).  Rees stated that "[t]here was no discussion by the panelists of any of the candidates' race or sex and those factors did not in any way enter in my consideration as to who was the best candidate. Furthermore, there was never any mention by anyone as to whether or not any of the candidates had ever earlier participated in EEO activity." (Doc. 14, Exhibit 2, ¶ 3).  Baugh stated that "[m]atters of race, sex or any personality matters were not discussed by the panelists at this or any other time. No mention of anything about any of the candidates previous EEO activities, if any, nor was I aware of any." (Doc. 14, Exhibit 4, ¶ 4). Donald Pettaway, EEO Chief, stated that

"[i]t was my personal observation that the panel actions, in arriving at its recommendation of Ms. Weeks for the Budget Analyst position, were not in any way influenced by any inappropriate EEO considerations." (Doc. 14, Exhibit 6, ¶ 4). Robinson, the Personnel Officer stated "[n]one of the panel members engaged in inappropriate conversation. My observation was that the panel properly followed the Mobile District's Corporate Selection Process in reaching its recommendation of Cheryl Weeks for the Program Analyst position." (Doc. 14, Exhibit 7, ¶ 4).

      11. Panel Chair Bond completed the selection package required by the Corporate Selection Process. (Doc. 14, Exhibit 10). The panel recommended Weeks to Lieutenant Colonel Joseph Corrigan, the Selection Official and the Deputy District Engineer. (Doc. 14, Exhibit 11). On or about November 26, 2002, Weeks' selection was approved. (Doc. 14, Exhibit 1 at ¶ 10).

      12. On March 19, 2003, plaintiff filed an administrative EEO complaint with the Department of Defense, Civilian Personnel Management Service, Office of Complaint Investigations (DOD-OCI) wherein he complained that he was not selected for the vacancy announcement for a Program Analyst (GS-11) because of his race, sex, and reprisal for the earlier EEO complaint. (Docs. 14, 22). At the DOD-OCI hearing, LTC Corrigan testified that he reviewed the entire selection package to ensure that procedures were followed and no errors were made, even math errors, and decided to approve the selection of Weeks as the proper selectee because senior management was involved, before and after the process, and the panel selection procedure was followed. (Doc.14, Exhibit 11, DOD-OCI transcript, pp. 52-56). Gary Rowell[5], Investigator for the DOD, found that "[m]anagement's articulated reasons for not

---

[5] The court notes that plaintiff filed a document entitled "Investigative File" which appears to be his entire DOD-OCI investigation file which includes an investigative report signed by Rowell. The document consists of over 250 pages, however the plaintiff specifically

initially considering Complainant [pursuant to the priority consideration that resolved his earlier complaint] appear to be, at least in part, in conflict." (Doc. 26, p.7, Investigative Report). Rowell also found that "[c]onsequently, the preponderance of the evidence of record fails to show this reason (i.e., Complainant providing false and misleading information in his application) for not giving priority consideration to be worthy of belief." (Doc. 26, p.7, Investigative Report). In regard to the panel selection process, Rowell found as follows:

> management provided legitimate, nondiscriminatory reasons for not selecting Complainant during the competitive process. In response to Complainant's testimony, Mr. Bond's articulated reasons for not selecting Complainant were that Complainant was not as skilled as the selectee with computer applications, his experience was more structured or limited that the selectee, and he would not get along with peoples aw well as the selectee. Mr. Day, a panel member who is of the same protected group as Complainant, testified that he ranked Complainant third, predicated on the panel's assessment criteria, which particularly focused on the scope of a candidate's experience. Ms. Rees believed that Complainant's interview could have been much better. She did not think he understood what the position required. The preponderance of the evidence of record shows these reasons to be worthy of belief.

(Doc. 26, p. 8, Investigative Report).

  13. Plaintiff having exhausted his administrative remedies with the DOD, timely filed his complaint. (Doc. 1).

## II. <u>Summary Judgment Standard</u>

  Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

---

references only one page in his response. (Docs. 26, 27). Defendant points out that the Investigative File as submitted is not certified or authenticated but for one part which is not relevant to the issue in this case. (Doc. 19).

party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. Id.  "If the nonmoving party fails to makes 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment." Id. (quoting Celotex Corp., v. Catrett, 477 U.S. 317 (1986) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004).

      The Eleventh Circuit has expressly rejected the notion that summary judgment should be seldom used in employment discrimination cases because they involve issues of motivation and intent.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale." Id. at 1086 (citation omitted).

      With this legal framework in mind, the court now turns to the specific grounds upon which the parties base their respective motions for summary judgment.

**III.    Discussion**

   **A.  Race and sex discrimination**

Defendant moves for summary judgment on the issues of race and sex discrimination and argues that plaintiff failed to raise a prima facie case of discrimination because he can not show that he was at least equally qualified for the position as the white female Weeks.  Defendant argues that because plaintiff has failed to establish his prima facie case, the burden does not shift to defendant to "articulate a legitimate, non-discriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  However, defendant sets forth its legitimate non-discriminatory reasons for selecting Weeks and provides evidence (declarations of the panel selection committee, monitors, and testimony of the selection official) to establish that plaintiff was not subject to race and sex discrimination. (Doc. 14, Exhibit 1 (Bond); (Exhibit 2 (Rees); (Exhibit 3 (Day); Exhibit 4 (Baugh); (Exhibit 5 (Burke); Exhibit 6 (Pettaway); Exhibit 7 (Robinson); Exhibit 10 (Corporate Selection Package); and Exhibit 11, OCI transcript, pp. 52-56 (Corrigan's testimony).

Plaintiff responds that he has made his prima facie case by showing that he was at least as qualified as Weeks because he was one of the final three employees selected for interview. Plaintiff further argues that the reasons given by defendant for not selecting him were a "pretext" and that he can raise a fact question as to the credibility of defendant's reasons for the non-selection. (Doc. 22).  Plaintiff argues that when the "employer's reasons are shown to be questionable, there are genuine issues of material fact for the jury to determine." (Doc. 22).  In that regard, plaintiff argues that he has demonstrated "pretext" because his supervisor Bond "issued a memo to personnel '(See, Agency Comments and Exhibits, 18, April 2003) saying that

Mr. Smith had 'made false or misleading statements in his resume.'" (Doc. 22, p.3). Plaintiff also offers Rowell's finding that "[m]anagement's articulated reasons for not initially considering [Benny Smith] . . . appear to be, at least in part, in conflict." (Doc. 26, p.7, Investigative Report).

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in various employment practices. 42 U.S.C. § 2000e-2. Plaintiff bears the burden of proving the employer's unlawful discrimination. Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000). A plaintiff may establish a claim through the introduction of direct evidence or circumstantial evidence that creates an inference of discrimination. If the claim is based on circumstantial evidence, the McDonnell Douglas/Burdine framework is used to evaluate the claim. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089 (1981). Under this framework, the plaintiff must first establish "a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). "The employer then bears the burden to show a legitimate and non-discriminatory reason for the employment action. If this burden is met, then the presumption is rebutted and the burden shifts back to the plaintiff to show the proffered reason was a pretext for discrimination." Carter v. Bowman, 2006 WL 531294 (11th Cir. 2006).

To establish a prima facie case of race discrimination plaintiff must show "1) that he was qualified and applied for the position; 2) that he was rejected despite his qualifications; and 3) other equally or less qualified employees who were not members of his race were hired." Bass v. Board of County Commissioners, 256 F. 3d 1096, 1103 (11th Cir. 2001). In order to prove

discrimination on the basis of sex in a particular hiring, plaintiff must show the following to establish a prima facie case:

> (1) that he was a member of protected class (male);
> (2) that he applied for and was qualified for the position;
> (3) that he was not hired into the position;
> (4) and that the position was awarded "to an equally qualified or less qualified employee who was not a member of the protected class."

Durley v. APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000).

Assuming that plaintiff has made his prima facie showing, he has not offered sufficient evidence to establish that a genuine issue remains that defendant's non-discriminatory reasons for selecting Weeks (see supra, Factual Background, p. 6-8) are mere pre-text. For plaintiff to survive summary judgment after the defendant has produced evidence of "legitimate, non-discriminatory reasons for the employment action", he must "present concrete evidence in the form of specific facts which show the defendant's proffered reason is mere pretext." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). "Mere conclusory allegations and assertions will not suffice". Id. (citations omitted). Recently, the Eleventh Circuit addressed this burden as follows:

> A plaintiff may overcome the employer's asserted legitimate reasons and avoid summary judgment "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir.1999) (quotation marks and citation omitted). To establish pretext, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [each of those reasons] unworthy of credence." Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004), cert. denied, No. 05-88 (U.S. Oct. 17, 2005); see also Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) (*en banc*). In doing so, the plaintiff "must meet [the proffered legitimate] reason head on and rebut it, and the employee cannot succeed simply by quarreling with the wisdom of that reason." Chapman, 220 F.3d at 1030 (citation

omitted).

Johnson v. Nicholson, 2005 WL 3199278, *5 (11th Cir. 2005).

Plaintiff responds that he can demonstrate pretext on the part of Bond because when Bond was supposed to give him priority consideration , Bond "issued a memo to personnel (See, Agency Comments and Exhibits, 18, April 2003) saying that Mr. Smith had 'made false or misleading statements in his resume'" but the "statements alleged by Bond to have been misleading or false were Mr. Bond's own words taken from Mr. Smith's Evaluation Reports." (Doc. 22, p. 3).  However, plaintiff did not cite to any page of the 250 page Investigative File submitted as evidentiary support for his response at which the court might find this evidence. (Docs. 26, 27).  Merely stating the date and title of the document does not give this court any guidance as to where it might be found among the 250 pages.  The court will not search the report to find plaintiff's evidence for him. See Garrison v. Travel Centers of America, 2005 WL 1711884 *3 n.12 (S.D. Ala. 2005);[6] Powers v CSX Transportation, Inc, 190 F. Supp 2d 1384, 1287 n.2 (S.D. Ala 2002) (finding that the "plaintiff may not, by this simple expedient, shift to the court the burden of identifying evidence supporting her position" by dumping "into the record over 500 pages of deposition testimony yet cit[ing] to fewer than 100 pages").

---

[6] "Local Rule 7.2(b) requires a party responding to a Rule 56 motion to 'point out the disputed facts appropriately referenced to the supporting document or documents filed in the action'. Id. By submitting a lengthy factual narrative that is nearly devoid of record citations, plaintiff apparently would shift the burden to the Court to sift through record material in search of support for her factual allegations. It is not incumbent on this Court to do so.  See LR 7.2(b); see generally Witbeck v. Embry Riddle Aeronautical University, Inc., 219 F.R.D. 540, 547 (M.D. Fla. 2004) ('That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial.')" Garrison, 2005 WL 1711884 at 3, n.12.

However, review of the pleadings and evidence submitted indicates that Bond's statement, upon which plaintiff relies to show pretext regarding the decision of the panel selection committee, was made in regard to why plaintiff was not given priority consideration for the GS-11 position[7]. To the extent plaintiff alleges that he should have been given priority consideration for the position as required by the settlement agreement reached in his prior case, this claim has previously been raised and resolved.[8] The failure to give priority consideration is not an issue in this case.

In any event, plaintiff's sole reliance on the statements made by Bond in regard to the priority consideration as evidentiary support from which this court is to infer "pretext" fails. First, it should be noted that even if the court were to assume that Bond's individual decision to rank plaintiff last among the candidates was based on improper reasons, it is not disputed that Bond's ranking of plaintiff did not change the outcome of the panel decision. (See supra, Factual Background, ¶ 6). Moreover, based on review of the declarations of the panel members, the two monitors, and the selection official submitted by defendant, and the lack of any evidence submitted by the plaintiff to the contrary, the court finds that there is simply no evidence that false or misleading statements were made by any "Caucasian member(s) of management" during

---

[7] Plaintiff cites to the Investigative Report wherein Rowell stated as follows: "Management's articulated reasons for not initially considering [Benny Smith] . . . appear to be, at least in part, in conflict." (Doc. 26, p.7). However, when the full quote is read, this argument is directed toward the "priority consideration" and not the panel selection process. Rowell's quote reads as follows: "[m]anagement's articulated reasons for not initially considering Complainant, pursuant to the priority consideration that resolved his earlier complaint, appear to be, at least in part, in conflict." (Doc. 26, p.7.) Thus, plaintiff omitted important wording from the quote which shows that this statement was made by Rowell after his investigation of plaintiff's complaint regarding his priority consideration.

[8] Supra, fn. 2.

the panel selection process.⁹   Thus, the plaintiff has failed to demonstrate that a reasonable factfinder could find the employer's proffered explanation for not hiring plaintiff unworthy of credence.

Plaintiff also makes a blanket argument that the record contains evidence from which a jury could infer that defendant's decision was "undertaken with discriminatory intent" and thus a jury should decide the issue. (Doc. 22).  However, the only evidence he specifically cites is that regarding Bond which is addressed supra.  Plaintiff also makes several unsupported arguments in his brief, such as his argument that he "offered testimony at the FFC substantiating his claims that he was more qualified than the Caucasian female applicant who was selected for the vacancy." (Doc. 22).  However, despite plaintiff's obligation to provide citations to specific evidence to support his argument, he does not cite to any page in the Investigative File, the only evidence he has submitted, to support this allegation.  As previously discussed, the court will not sort through the 250 plus page file to find evidence to support the factual allegations raised in plaintiff's response. Garrison, 2005 WL 1711884 at 3, n.12.

The court finds that there is no genuine issues of material fact as to plaintiff's claims of race and sex discrimination and that defendant is entitled to judgment as a matter of law.  Therefore, upon consideration of the foregoing, defendant's motion for summary judgment as to plaintiff's claim for race and sex discrimination is **GRANTED**.

**B.     Retaliation**

---

⁹ In his complaint, plaintiff alleges that during the interview process for the GS-11 position, "false and misleading statements were made by caucasian member(s) of management concerning the Plaintiff and his qualifications .... The said disparaging remarks tainted the selection panel which caused or contributed to the Plaintiff's non-selection". (Doc. 1)

15

Plaintiff previously filed an EEO complaint on May 17, 2001.  In his complaint in this action, plaintiff alleges that he was not selected for the GS-11 position because "the selection committee, or at least some of its members, as well as management, was aware of the Plaintiff's prior complaint activity." (Doc. 1).

 In "order to establish a prima facie case of retaliation, plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action." Bass v. Board of County Commissioners, 256 F.3d 1096, 1117 (11th Cir. 2001).

Defendant argues that plaintiff is unable to make a causal connection between the protected activity and the adverse employment action because eighteen months lapsed between the first EEO activity on May 17, 2001 and the panel selection committee's decision to select Weeks instead of plaintiff in November 2002.  Defendant argues that in the Eleventh Circuit that period of time, as a matter of law, is insufficient to establish a causal relationship between the two events.  Defendant cites to cases wherein four to seven month gaps have been held legally insufficient.[10] (Doc. 14).  Defendant also argues that if plaintiff could establish a prima facie case, i.e. causal connection that is legally sufficient, his claim for retaliation fails for the same reasons as his race and sex discrimination claims: defendant had legitimate, non-discriminatory reason for selecting Weeks in that the panel selection committee found she was more qualified. (Doc. 14).

---

[10]  Wascura v. City of South Miami, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (finding that a four-month gap was legally insufficient to show causation); Sierminski v.Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir. 2000) (finding that a seven-month gap was legally insufficient to show causation); and Reynolds v. CSX Transp., Inc., 115 F.3d 860, 868 (11th Cir. 1997) (finding that periods of five and six months legally insufficient to show causation).

Plaintiff responds that he engaged in protected activity when he filed his prior EEO complaint. (Doc. 22).  He responds that "[i]t is undisputed as the documents submitted by the plaintiff will show, that the selection committee members, or at least some of them, were aware of [plaintiff's] prior protected activity." (Doc. 22, p. 1).  Plaintiff also responds that "as shown in the Investigative File, the Plaintiff had engaged in prior protected activity." (Doc. 22).  Again, plaintiff does not state which documents or evidence identifies who "some of them" were or what they were aware of and he does not cite to a specific page in the Investigative File to support his allegations.  The declarations presented by defendant indicate that none of the panel members but for Bond were aware of the prior EEO activity. (Doc. 14, Exhibits 1-5).  The two monitors and the selection official state that no mention was made of the prior EEO activity during the panel's deliberation process and interviews. (Doc. 14, Exhibit 6, 7, 11).  Thus, to the extent plaintiff raises this argument, the only evidence before the court supports a finding that only Bond had knowledge of the prior EEO and that this information was not revealed to the other panel members.  As discussed supra, Bond's decision even if based on improper motive, did not change the outcome.  Moreover, plaintiff has failed to present any evidence that a causal connection existed or to rebut defendant's argument that the lapse of time precludes plaintiff's argument.

The court finds that there is no genuine issues of material fact as to plaintiff's claims of retaliation and that defendant is entitled to judgment as a matter of law.  Therefore, upon consideration of the foregoing, defendant's motion for summary judgment as to plaintiff's claim for retaliation is **GRANTED**.

**D**.     **Punitive Damages**

Defendant states that plaintiff's claim for punitive damages is precluded against governmental agencies, such as the Department of the U.S. Army, pursuant to Title VII.  42 U.S.C. § 1981a(b)(1); see Garrison v. Johnson, 286 F. Supp 2nd 41, 42 (D. Maine 2003).  Plaintiff did not respond to this argument.  Therefore, upon consideration of the code section and case law which defendant submits, defendant's motion for summary judgment as to plaintiff's claim for punitive damages is **GRANTED**.

## CONCLUSION

Accordingly, the Court finds that there is no genuine issue of material fact as to whether defendant discriminated against plaintiff based on race, sex, or retaliation, thus defendant is entitled to summary judgment.  Accordingly, defendant's motion for summary judgment (Doc. 13) is **GRANTED.**

**DONE** and **ORDERED** this the 13th day of March, 2006.

 s / Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**